| | |
|---|---|
| Lemar Gant, | Case No.: 2:16-cv-00011-JAD-VCF |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Ordering Plaintiff to Show Cause** |
| v. | |
| Brian Williams, et al., | [ECF No. 54] |
| Defendants | |

Lemar Gant sues various Nevada Department of Corrections (NDOC) prison officials for violations of his civil rights under 42 U.S.C. § 1983. Defendants Bloomfield, Sandoval, Byrne, Hunt, Thrasher, Williams, and Pichardo move for summary judgment on the claims against them.[1] Because Gant presents no evidence to demonstrate that he can prevail on his equal-protection claim, I grant summary judgment for Williams, Byrne, Hunt, and Sandoval on that claim. I also grant judgment in Bloomfield, Thrasher, and Pichardo's favor on the retaliation and strip-search claims because Gant failed to properly exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA). And because remaining defendants Johnson, Brcic, and Chipo have not been served, I order Gant to show cause why his claims against them shouldn't be dismissed under Federal Rule of Civil Procedure 4(m).

## Background

### A.    Gant's transfer to Ely State Prison

In September 2014, Lemar Gant was an inmate at the Southern Desert Correctional Center (SDCC). Since May 6, 2014, Gant's validated security-threat-group (STG) status is Sureño, which indicates that he is a member of or affiliated with the Sureño gang.[2]

---

[1] ECF No. 54.

[2] *See* ECF No. 54-10 at 2.

1

On September 22, 2014, SDCC staff members were assaulted by inmates associated with the Sureños.[3]  As a result of the attack, inmates with validated Sureño affiliations were placed under investigation to determine who was responsible.[4]  To prevent further security issues, the Sureño-affiliated inmates were temporarily placed in administrative segregation.[5]  Under the NDOC administrative regulations, inmates placed in administrative segregation following the occurrence of violent conduct may be temporarily transferred to another prison while investigations are pending.[6]  SDCC held a "classification review change hearing" for Gant, and the review committee determined that he should be temporarily transferred to the Ely State Prison (ESP) pending investigation.[7]  Gant was not present at the hearing due to safety and security concerns.[8]  The committee's transfer request was approved by NDOC's Offender Management Division, and Gant was transferred to ESP on September 24, 2014.[9]  In March 2015, he was transferred from ESP to High Desert State Prison (HDSP).  Gant was transferred back to SDCC in September 2015.[10]

**B.     May 2016 events**

Gant alleges that on May 23, 2016, officers Sean Bloomfield, Eric Brcic, Douglas Trasher, and Michael Pichardo searched his cell and destroyed his property.  Bloomfield and Thrasher acknowledge in declarations that they were involved in searching Gant's cell on May 23rd, but state that they also conducted routine searches of all of the cells in Gant's unit.[11]

---

[3] ECF No. 54-1 at 3.

[4] *Id.*

[5] *Id*.

[6] ECF No. 54-9 at 3 (NDOC Administrative Regulation (AR) 506.03, governing "change classification hearings").

[7] ECF No. 54-1 at 3.

[8] ECF No. 54-10 at 2.

[9] ECF No. 54-11 (Gant's movement history report).

[10] *Id.*

[11] ECF Nos. 54-5, 54-6.

Pichardo declares that he was assigned at HDSP, not SDCC, on May 23, 2016, and therefore did not participate in searching Gant or his cell.[12]

Gant also accuses Bloomfield of ordering officers Roberson, Watcher, and Gose to improperly strip search Gant after his cell was searched. Bloomfield declares that he ordered officers to strip search Gant because he refused to follow orders to stand with both hands on the wall while his cell was being searched. Gant's recalcitrance made Bloomfield believe that Gant may have been hiding contraband, warranting the search. Bloomfield was not present during the strip search.[13]

## C.    Procedural history

Gant's amended complaint alleges that SDCC Warden Brian Williams, ESP Associate Warden Harold Bryne, ESP correctional lieutenant Paul Hunt, and ESP correctional caseworker Tasheena Sandoval violated the Fourteenth Amendment's Equal Protection Due Process Clauses by transferring him from SDCC, which he classifies as a "minimum-security" prison, to ESP, a "maximum-security" prison, because he identifies as Hispanic.[14] He also alleges that SDCC officers Bloomfield, Trasher, and Brcic, and HDSP officer Pichardo violated the First Amendment and his due-process rights because they searched his cell and destroyed his property in retaliation for filing prison grievances related to his transfer. He also alleges that Bloomfield, Roberson, Watcher, and Gose violated the Eighth Amendment's prohibition against cruel and unusual punishment by strip searching him, which he contends was "retaliatory sexual harassment" because Bloomfield ordered the search only for his own "sexual gratification."[15]

I previously screened Gant's amended complaint under the PLRA.[16] I dismissed all of Gant's due-process claims and construed his strip-search claim as one governed by the Fourth

---

[12] ECF No. 54-7.

[13] *See* ECF No. 54-5.

[14] ECF No. 5.

[15] ECF No. 5 at 12.

[16] ECF No. 6.

Amendment instead of the Eighth. I dismissed Gant's claims against defendants Roberson, Watcher, and Gose with prejudice for failure to state a claim against them. So, the claims that remain are: (1) an equal-protection claim against Williams, Byrne, Hunt, Sandoval, Chipo, and Johnson; (2) a retaliation claim against Bloomfield, Brcic, Thrasher, and Pichardo; and (3) a Fourth Amendment strip-search claim against Bloomfield.

Defendants Brcic, Johnson, and Chipo have not been served. The U.S. Marshal Service attempted to effectuate service on Brcic and Johnson, but those attempts were unsuccessful.[17] The defendant named in the amended complaint as "Chipo" was never properly identified or served. Only defendants Williams, Byrne, Hunt, Sandoval, Bloomfield, Thrasher, and Pichardo bring this motion for summary judgment, so I focus on the claims against them.

### Discussion

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[18] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[19] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[20]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[21] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce

---

[17] See ECF Nos. 65 (order directing service with Johnson and Brcic's sealed addresses); 69 (notice of summons returned unexecuted for Johnson); 70 (same for Brcic).

[18] Fed. R. Civ. P. 56(a)).

[19] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[20] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[22]

## A.    Equal-protection claims

Gant contends that Williams, Byrne, Sandoval, and Hunt violated the Fourteenth Amendment's Equal Protection Clause by transferring him to ESP because he identifies as Hispanic.  The Equal Protection Clause is essentially a direction that all similarly situated persons be treated equally under the law.[23]  To prevail on an equal-protection claim, a plaintiff must demonstrate that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[24]

### 1.    Byrne, Hunt, and Sandoval did not participate in Gant's transfer to ESP.

Liability under § 1983 arises only upon personal participation by the defendant.[25]  "A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation [of] which [the plaintiff complains]."[26]

Byrne, Sandoval, and Hunt were officials at ESP when Gant was transferred.  Only officials at SDCC (the transferring prison) had any control over Gant's move to ESP.[27]  So

---

[22] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[23] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[24] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[25] *Fayle v. Stapley*, 607 F.3d 858, 862 (9th Cir. 1979).

[26] *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citation omitted).

[27] See ECF No. 54-1 (Williams declaration, describing transfer approval process for Gant); AR 506 and 507 (regulations governing administrative segregation and transfers after violent conduct).

5

Byrne, Sandoval, and Hunt lack personal participation in any alleged violation.[28]  The only involvement they may have had is the denial of Gant's administrative grievances related to the transfer.  But inmates are not constitutionally entitled to a grievance process or to a specific grievance procedure.[29]  Denial of a grievance, by itself, without any connection to the alleged violation of the constitutional rights alleged by a prisoner, does not establish personal participation under § 1983.[30]  And Gant presents no other evidence tying the ESP officers to his transfer or any other act that he alleges violated his constitutional rights.  So I grant summary judgment in Byrne, Hunt, and Sandoval's favor on Gant's equal-protection claim.

**2.    SDCC officials did not violate the Equal Protection Clause.**

Gant alleges that Williams transferred him to ESP after the staff assault because he is Hispanic.[31]  He further alleges that "white and black inmates at SDCC were not subjected to this same type of treatment when a black or a white inmate is involved in a physical altercation with a correctional officer.  In those situations only the inmates involved are subjected to punishment."[32]

But the evidence demonstrates that Gant was transferred because of his affiliation with the Sureño gang, not because of his membership in a protected class.  SDCC officials placed Sureño members, including Gant, in administrative segregation pending an investigation to determine their role, if any, in the assault and whether there were any additional safety and

---

[28] ECF Nos. 54-2 (Byrne declaration); 54-3 (Hunt declaration); 54-4 (Sandoval declaration).

[29] *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

[30] *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam); *Wright v. Shapirshteyn*, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009).

[31] Gant alleges that SDCC officials knew he wasn't involved in the assault because he was housed in a different unit than the inmates who attacked the officers, and that his unit was on limited lockdown on the day of the assault, meaning that he could not have been involved in the attack.  He also contends that the assault was caught on surveillance cameras, and that it would have been easy to determine from the footage that he was not involved.

[32] ECF No. 5 at 8.

security threats to staff and other inmates.[33]  Gant was then transferred to ESP because of his Sureño affiliation.

Despite Gant's allegation in his complaint that non-Hispanic inmates are not treated similarly in similar situations, he presents no evidence to support that assertion.  And Gant's gang affiliation significantly changes the calculus for who counts as a similarly-situated inmate here.  While it may be true that when inmates of a particular race are not transferred whenever another inmate of that race assaults a staff member, that's not what happened here either.  Gant's gang affiliation, not his race or national identity, was the reason for his transfer.  If other inmates were not subject to a transfer pending an investigation of the assault, it was because those inmates were not validated Sureño gang members, not because they were of a particular race or ethnicity.

Even if all Sureño members are Hispanic, SDCC has demonstrated a legitimate prison interest in the safety of SDCC staff and inmates that justified transferring known Sureño affiliates following an assault against SDCC staff by Sureños.  Gant presents no evidence to dispute any of SDCC's facts.  So, I grant summary judgment in SDCC Warden Brian Williams's favor on Gant's equal-protection claim.

**B.     Exhaustion of Gant's retaliation and strip-search claims**

The PLRA requires inmates to exhaust all available remedies before filing "any suit challenging prison conditions."[34]  Failure to properly exhaust all available remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove."[35]  Once a defendant proves that there was an available administrative remedy that the inmate did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative

---

[33] ECF Nos. 54-1; 54-8.

[34] 42 U.S.C. § 1997e(a).

[35] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

remedies effectively unavailable to him."[36]  Nonetheless, the ultimate burden of proof remains

with the defendant.[37]  The question of exhaustion is typically disposed of on summary judgment,

with the judge deciding disputed factual issues relevant to exhaustion.[38]  If feasible, exhaustion

should be decided before reaching the merits of a prisoner's claims.[39]

In *Woodford v. Ngo*, the United States Supreme Court held that the PLRA's exhaustion

requirement requires *proper* exhaustion.[40]  Proper exhaustion means that the inmate must

comply with the prison's "deadlines and other critical procedural rules" and properly use "all

steps that the [prison] holds out," so that the prison is given an opportunity to address the issues

on the merits.[41]  Recently, in *Ross v. Blake*, the United States Supreme Court reiterated that the

PLRA's proper exhaustion requirement is mandatory: exhaustion is only excused if

administrative procedures are not available.[42]

The NDOC has a three-level grievance process.[43]  An inmate begins this process by filing

an informal grievance.[44]  An inmate can appeal the prison's response to his informal grievance

by filing a first-level grievance.[45]  To exhaust, the inmate must also appeal the prison's first-level

response by filing a second-level grievance.[46]

---

[36] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

[37] *Id.*

[38] *Id.* at 1170–71.

[39] *Id.* at 1170.

[40] *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added).

[41] *Id.* at 90–91 (internal citation and quotation omitted).

[42] *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (holding that a court may not excuse an inmate's failure to exhaust administrative remedies before bringing suit under the PLRA, even to take "special" circumstances into account).

[43] NDOC Administrative Regulation (AR) 740.

[44] AR 704.05.

[45] AR 704.06.

[46] AR 704.07.

Gant failed to exhaust his administrative remedies for his retaliation and strip-search claims. In his complaint, Gant indicates that he exhausted his remedies by filing grievance log number 20062993227.[47] But that set of grievances only concerned Gant's transfer to ESP; they did not mention the events that took place on May 23, 2016.[48]

In his opposition to the summary-judgment motion, Gant files a host of additional grievances he filed throughout his incarceration. He filed an "emergency grievance" about the May 2016 searches, which was denied as "not an emergency per AR 740."[49] AR 740.10(5) states that "[i]n the event the inmate requests further review of a claim not deemed an emergency, the inmate may file a grievances appeal commencing at the informal level."[50] Instead, it appears that Gant filed an "inmate request form" requesting the opportunity to speak with "Sergeant Willet" about the search. Willet responded by stating that Gant needed to use the grievance process.[51] He then sent yet another "inmate request form" complaining of the conduct, which was also responded to.[52] But sending inmate-request forms is not the proper administrative remedy at NDOC. Gant has not provided any evidence that he submitted an informal grievance and subsequent first- and second-level grievances required to exhaust his remedies with respect to his retaliation and strip-search claims. Therefore, the PLRA bars these claims, so I dismiss them.

**C.    Unserved defendants**

Defendants Brcic and Johnson have not been served in this action. Federal Rule of Civil Procedure 4(m) requires service of the summons and complaint to be completed within 90 days of the complaint's filing, and "[i]f a defendant is not served within 90 days after the complaint is

---

[47] ECF No. 5 at 14.

[48] Indeed, they couldn't have. Gant filed his second-level grievance on May 28, 2015, almost one year before Gant's retaliation and strip-search allegations took place. *See* ECF No. 54-12 at 2.

[49] ECF No. 73 at 30.

[50] AR 740.10(5).

[51] ECF No. 73 at 32.

[52] *Id.* at 34.

filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[53] Rule 4(c)(1) further makes it clear that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed under Rule 4(m)."[54]

In December 2016, Judge Ferenbach ordered the Clerk of Court to electronically serve Gant's amended complaint to the Attorney General's Office, and ordered the Attorney General's Office to file a notice advising the court and Gant of (1) the names of the defendants for whom it accepts service, (2) the names of the defendants for whom it does not accept service, and (3) the names of the defendants for whom it is filing the last-known-address information under seal. If service could not be accepted for any of the named defendants, Gant was ordered to file a motion identifying the unserved defendants, requesting issuance of summons, and "specifying a full name and address for the defendants."[55]

The Attorney General's Office accepted service for the majority of the defendants, but did not accept service for Johnson, Brcic, or Chipo. Following Judge Ferenbach's order, the AG's office filed the last-known addresses of Eric Brcic and Darnell Johnson under seal.[56] It also notified the court that "Chipo" could not be identified. Judge Ferenbach denied Gant's motion to properly identify "Chipo."[57] He ordered the US Marshal to serve Brcic and Johnson, but because their last known addresses were kept under seal, Gant could not write the addresses on the USM 285 forms prisoners are required to complete for the Marshal to effectuate service. So, the Marshals refused to attempt service.[58]

---

[53] Fed. R. Civ. P. 4(m).

[54] Red. R. Civ. P. 4(c).

[55] ECF No. 11.

[56] ECF Nos. 13, 33.

[57] ECF No. 35.

[58] *See* ECF No. 51.

I recently ordered the U.S. Marshal to effectuate service on Brcic and Johnson despite Gant's incomplete USM 285 form.[59]  The summonses for both defendants were returned unexecuted.[60]  Gant has not asked for any additional efforts to be taken to serve these defendants, and his attempts to do so have spanned over one year.  So, I order Gant to show cause why the claims against Brcic, Johnson, and the defendant referred to as "Chipo" should not be dismissed under Rule 4(m).

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants Bloomfield, Sandoval, Byrne, Hunt, Thrasher, Williams, and Pichardo's motion for summary judgment **[ECF No. 54] is GRANTED.**  The **Clerk of Court** is directed to **ENTER JUDGMENT in these defendants' favor.**

IT IS FURTHER ORDERED that Plaintiff Lemar Gant **must SHOW CAUSE by June 4, 2018** why the claims against Brcic, Johnson, and Chipo should not be dismissed under Rule 4(m).  **If Gant fails to respond by this deadline or does not demonstrate good cause, his claims against these remaining defendants will be dismissed without further notice, and this case will be closed.**

Dated: May 14, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[59] ECF No. 65.

[60] ECF Nos. 69, 70.